LONG ISLAND RAIL ROAD COM-
PANY, Plaintiff,

v.

BROTHERHOOD OF RAILROAD TRAINMEN, in its own right and as representative of Road and Yard Conductors, Ticket Collectors, Road and Yard Brakemen and Switchtenders, employees of The Long Island Rail Road Company,

Harold J. Pryor and Harry T. Burke, individually, and as General Chairman and Vice Chairman, respectively, of the General Grievance Committee of the Brotherhood of Railroad Trainmen— Long Island Rail Road, and as representatives of said Brotherhood and the aforementioned employees,

Nicholas Artura, John F. Manor, Merrill J. Pierce, Charles J. Quinn, Nicholas Sosnicki, and James J. Walsh, individually, and as members of the General Grievance Committee of the Brotherhood of Railroad Trainmen—Long Is-

land Rail Road, and as representatives of said Brotherhood and the aforementioned employees,

Frank S. Bohl and Gerald M. Flynn, individually, and as President and Treasurer, respectively of Lodge 517 of the Brotherhood of Railroad Trainmen, and as representatives of said Brotherhood and the aforementioned employees,

Frank Ryan and Edward W. M. Travis, individually, and as President and Secretary and Treasurer, respectively, of Lodge 1090 of the Brotherhood of Railroad Trainmen, and as representatives of said Brotherhood and the aforementioned employees, Defendants.

Civ. No. 60-C-573.

United States District Court
E. D. New York.

June 18, 1960.

Otto M. Buerger, Jamaica, N. Y., for plaintiff.

Zelenko & Elkind, New York City, for defendants, Arnold B. Elkind, New York City, of counsel.

BARTELS, District Judge.

Plaintiff, The Long Island Rail Road Company (hereinafter referred to as the "Railroad", is a common carrier engaged in the transportation of passengers and property in interstate and foreign commerce, serving the traveling public and numerous industries in the Counties of Kings, Queens, Nassau and Suffolk on Long Island, and is a "carrier" within the meaning of that term as defined in the Railway Labor Act (45 U.S.CA. §§ 151 et seq., hereinafter referred to as "the Act"). It operates approximately 650 scheduled passenger trains each week day, Monday through Friday, carrying about 260,000 passengers daily, the bulk of whom are regular commuters using the westerly terminals of the Railroad in the Boroughs of Brooklyn, Queens and Manhattan in New York City, and also operates 400 scheduled passenger trains on Saturday and 375 on Sunday. In addition, the Railroad is a necessary physical link with other railroads in the movement of a heavy volume of interstate rail freight via the New York City gateway between Long Island and other parts of the United States.

Defendants are the Brotherhood of Railroad Trainmen of the Railroad and the officers and representatives of said Brotherhood and its Grievance Committee (hereinafter collectively referred to as the "Brotherhood").

In its complaint the Railroad, in substance, charges the Brotherhood with failure to comply with the provisions of the Act in that they failed to bargain in good faith during the periods of time provided therefor but instead permitted these periods to run their course with only perfunctory and meaningless gestures and with no genuine intent to exert every reasonable effort to settle the dispute between the parties, and in addition publicly expressing contempt for the President's emergency fact finding board. The Railroad seeks (1) an injunction restraining the Brotherhood from (a) striking or causing strikes or work stoppages against the Railroad until the Brotherhood has complied fully with all of the obligations imposed upon them by the Act in connection with the dispute and (b) picketing the premises on which the Railroad conducts its operations; (2) a preliminary injunction until the trial; and (3) a temporary restraining order for the relief prayed for, effective until the determination by this Court of the Railroad's application for a preliminary injunction. The complaint also seeks damages against the Brotherhood in the sum of $1,000,000.

This action was precipitated by a strike call to all of the Railroad's workmen issued by the Brotherhood on June 14, 1960, advising the Railroad that effective 12:01 A.M. Sunday, June 19, 1960, all men represented by the Brotherhood will withdraw from service of the Railroad in a strike.

The Railroad then applied to this Court for an Order to Show Cause which it granted, directing the Brotherhood to show cause before this Court on June 16, 1960, why a preliminary injunction should not be issued as prayed for in the complaint and why a temporary restraining order should not be issued pending the determination of the Railroad's application. Based upon the affidavits of the parties and the hearing held on June 16, 1960, it clearly appears that unless a temporary restraining order is issued pending a hearing on the preliminary injunction, irreparable injury will result to the Brotherhood, the Railroad and, in particular, the general public.

■ Section 2, First, of the Act specifically provides that it shall be the duty of all carriers and employees "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, * * *". To effectuate the purposes of the Act and to prevent a mockery of its requirements such efforts must be reasonable and made in good faith and not simply to satisfy perfunctory compliance. Empty motions and hollow gestures are not sufficient. See, American Airlines, Inc. v. Air Line Pilots Ass'n Inter., D.C.N.Y.1958, 169 F. Supp. 777.

■ The Railway Labor Act specifically provides machinery for the settling of railroad labor disputes. Until that machinery is exhausted the Norris-LaGuardia Act (29 U.S.C.A. § 101 et seq.) does not deprive this Court of jurisdiction to issue a restraining order or an injunction to enforce the mandatory duty imposed upon both parties by the Railway Labor Act to follow its procedures in the case of major disputes. This is illustrated by the statement of Representative LaGuardia in the following discussion upon the Norris-LaGuardia bill which took place between him and representative Lankford of Virginia:

"Mr. Lankford: Will the gentleman answer this question? Does this (Norris-LaGuardia Act) make it possible for lack of an injunction to tie up railroads and prevent them from transporting milk, for instance?

"Mr. LaGuardia: I think the gentleman was a Member of the House in 1926?

"Mr. Lankford: No.

"Mr. LaGuardia: We then passed the railroad labor act, and that takes care of the whole labor situation pertaining to the railroads. *They could not possibly come under this (the Norris-LaGuardia Act) for the reason that we provided the machinery there for settling labor disputes.*" 75 Cong.Rec. 5499 (1932). (Emphasis added)

See also American Airlines, Inc. v. Air Line Pilots Ass'n Inter., supra, 169 F. Supp. at pages 785–789, referring to the history and background of both Acts.

■ A notice pursuant to Section 6 of the Railway Labor Act enumerating the demands of the Brotherhood was given on December 2, 1959 and the dispute has continued since that time. Under the circumstances it appears that the additional delay caused by a temporary restraining order to preserve the status quo until the hearing on the preliminary injunction will not be prejudicial to the Brotherhood.

Accordingly it is hereby:

Ordered that defendants Brotherhood of Railroad Trainmen, in its own right and as representative of Road and Yard Conductors, Ticket Collectors, Road and Yard Brakemen and Switchtenders, employees of The Long Island Rail Road Company; Harold J. Pryor and Harry T. Burke, individually, and as General Chairman and Vice Chairman, respectively, of the General Grievance Com-

mittee of the Brotherhood of Railroad Trainmen—Long Island Rail Road, and as representatives of said Brotherhood and the aforementioned employees; Nicholas Artura, John F. Manor, Merrill J. Pierce, Charles J. Quinn, Nicholas Sosnicki, and James J. Walsh, individually, and as members of the General Grievance Committee of the Brotherhood of Railroad Trainmen—Long Island Rail Road, and as representatives of said Brotherhood and the aforementioned employees; Frank S. Bohl and Gerald M. Flynn, individually, and as President and Treasurer, respectively of Lodge 517 of the Brotherhood of Railroad Trainmen, and as representatives of said Brotherhood and the aforementioned employees; Frank Ryan and Edward W. M. Travis, individually, and as President and Secretary and Treasurer, respectively, of Lodge 1090 of the Brotherhood of Railroad Trainmen, and as representatives of said Brotherhood and the aforementioned employees, their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of this Order, be and they hereby are directed and required to cease, desist and refrain from (a) calling, promoting, instigating, aiding, abetting, continuing or participating in a strike or work stoppage against plaintiff railroad and all acts in furtherance or support thereof, and (b) picketing the premises on which plaintiff railroad conducts its operations, including the entrances and any other places where said premises are situated; interfering with ingress to or egress from said premises, or loitering or congregating on the premises of plaintiff railroad or at or near any approaches thereto and upon any public street or highway leading to and from any place which the employees of the plaintiff railroad, or those having business with the plaintiff railroad, desire to enter or leave en route to or from said premises; and it is further

Ordered that, unless extended, this temporary restraining order shall terminate upon the determination of plaintiff's application for a preliminary injunction or at the expiration of five (5) days from the date of the service hereof, whichever shall be sooner; and it is further

Ordered that plaintiff's motion for a preliminary injunction be and the same hereby is set for a hearing before this Court on Tuesday, June 21, 1960, at 11:30 A.M., or as soon thereafter as counsel can be heard; and it is further

Ordered that Martin C. Carroll, Harry Cook, Edwin Delaberti, Joseph J. Deptuch, Louis F. Dietz, Arthur G. Dilly, Michael E. Egan, Howard N. Hucke, Jr., John F. Lorimer, Anthony A. Polizzo, Jerome R. Osborne and Lincoln G. Ross are hereby specially appointed, pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for the purpose of serving this temporary restraining order in accordance with the foregoing.